Not for Publication

**United States District Court**
**for the District Of New Jersey**

| | |
|---|---|
| LOMBERG & DEL VESCOVO, LLC<br>　　　　　Appellant,<br>　v.<br>ELIOT S. SASH<br>　　　　　Appellee. | Civil No.: 13-3117 (KSH)<br>On Appeal From Orders of the<br>United States Bankruptcy Court for<br>the District of New Jersey<br>(Case No. 12-37106)<br>**Opinion** |

**Katharine S. Hayden, U.S.D.J.**

　　　A client of the law firm of Lomberg & Del Vescovo, LLC [hereinafter "Lomberg"] filed for bankruptcy on the heels of the firm's efforts to collect on fees of $25,606.60. Lomberg now appeals two orders of the bankruptcy court. The first denied Lomberg's motion to permit earlier-filed state-court proceedings to go forward notwithstanding the bankruptcy petition, and the second denied Lomberg's objections to certain claimed exemptions. For the following reasons, the orders will be affirmed.

I.

　　　The parties agree on the basic facts and procedural history of the case. Beginning in 2009, Lomberg represented debtor Eliot Sash in his Hudson County divorce case. (*See*

1

Del Vescovo Cert. ¶ 2, Appellant's Appendix [hereinafter "A."] 64 [D.E. 8-1].)[1]  While that case was ongoing, Sash filed an unrelated personal injury suit, *Sash v. Chu*, also in Hudson County, in which he was represented by a different firm, non-party Schonwald & Iskra [hereinafter "Iskra"].  (*See* Turner Cert. ¶ 6, A.53; Del Vescovo Cert. ¶¶ 3, 6, A.64–65.)

At the end of the matrimonial proceedings, Sash owed Lomberg an outstanding balance of $25,606.60.  In July 2011, he and the firm entered into a written agreement establishing that he would pay what he owed out of the proceeds of his personal injury suit.  The record reflects that Sash signed a letter "execut[ing] a lien" and "granting a security interest to [Lomberg] in [his] share of the proceeds that may result from [*Sash v. Chu*] in the full amount which [he] currently owe[d] [Lomberg], $25,606.60."  (July 11 Letter, A.68–69.)  Lomberg sent a copy of the executed agreement to Iskra, with a cover letter stating:

> Enclosed please find an executed agreement by this firm's former client, Eliot Sash, placing a lien upon his share of the proceeds of *Sash v. Chu*, HUD-L-1302-10.  It is my understanding that you are representing Mr. Sash in this matter and will disburse the funds pursuant to this lien.  Thank you for your cooperation.

(July 12 Letter, A.70.)

*Sash v. Chu* eventually settled in October 2012.  However, pursuant to Sash's

---

[1] When possible, record citations will be to the appendix docketed at D.E. 8-1. Otherwise, the Court will refer directly to the bankruptcy court's docket, D.N.J. Bankr. No. 12-37106-NLW.

instructions, Iskra did not remit the $25,606.60 to Lomberg.  The money instead remained in Iskra's attorney trust account.  (Del Vescovo Cert. ¶ 13, A.66.)  On October 26, 2012, Lomberg sought emergent relief in the *Sash v. Chu* proceeding by way of an order to show cause why Iskra should not immediately release the funds in its trust account in satisfaction of the fees Sash owed to Lomberg, referencing the "lien on the funds per the agreement" discussed above.  (October 26, 2012 Letter 1, A.62.)  Lomberg claimed in its papers that Sash had said the funds would be disbursed shortly, while at the same time allegedly instructing Iskra to the contrary.  (October 26, 2013 Letter 2, A.62; Del Vescovo Cert. ¶¶ 12–13, A.66.)

The same day that the state court was to hold a hearing on Lomberg's application, Sash filed a voluntary Chapter 7 bankruptcy petition in this District, thereby staying the state proceedings.  On his Schedule B, Sash listed the amount being held in escrow as "Net proceeds from auto accident claim against Chu held by Schonwald & Iskra (Subject to possible lien of [Fr]ancine Del Vescovo, Esq)."  (Bankruptcy Schedules 6, A.15.)  Sash claimed a $20,489.00 exemption against that amount on his Schedule C, pursuant to the statutory exemption for a debtor's interest in a personal-injury payment, 11 U.S.C. § 522(d)(11)(D).  (Bankruptcy Schedules 8, A.17.)  Lomberg's interest on that amount was categorized as an unsecured nonpriority claim.  (*See* Bankruptcy Schedules 14, A.23.)

Both the Chapter 7 Trustee and Lomberg filed objections to the claimed

3

exemptions.  The Trustee objected to what it styled as "two bites at the exemption apple." (Trustee's Objections ¶¶ 10–12 [Bankr. D.E. 19].)   Lomberg objected "to any claimed exemption under 11 U.S.C. 522(d) (11)[(]D), or any other section of the Bankruptcy Code, in the specific funds [Sash] previously assigned and granted a security interest to it in the amount of $25,606.00."  (Objection 1, A.48.)

    A few weeks later, Lomberg filed a document captioned "Notice of Motion to Permit State Court Proceedings on Pre-Petition Order to Show Cause," which on the bankruptcy court's docket was called "Motion to Confirm, Termination or Absence of Stay" [*sic*].  The firm sought "entry of an order from the Bankruptcy Court permitting the Superior Court of New Jersey to rule on the previously-filed order to show cause, which was scheduled for hearing just before the bankruptcy case was filed." (Turner Cert. ¶ 34, A.57.)  Lomberg argued that its interest in the *Sash v. Chu* settlement proceeds arose pursuant to N.J.S.A. § 2A:13-5, which governs attorney charging liens, and asked the bankruptcy court for "the right to have the Superior Court of New Jersey determine the validity of the lien and opine on the procedures followed in this case." (Turner Cert. ¶ 50, A.60.)  Attached to the motion were the relevant portions of the state-court proceedings, as well as a proposed order setting forth, in part, that "the automatic stay provisions of 11 U.S.C. 362(a) do not apply to the funds previously pledged by the Debtor and for which a security interest was given to Lomberg [] more than one year before the bankruptcy was filed."  (Proposed Order 2, A.75.)

Sash opposed.  So did the Trustee [*see* Bankr. D.E. 28–29], which specifically objected to Lomberg's request to permit the state court proceedings to go forward and pointed to a "fundamental flaw" in Lomberg's argument: "the movant is a matrimonial attorney asserting a charging lien on another attorney's matter."  Thus, according to the Trustee, the purported lien was unperfected.  (Newman Cert. ¶¶ 12, 19–20 [Bankr. D.E. 33].)

On February 11, 2013, Bankruptcy Judge Novalyn Winfield held a hearing on the pending motions.  She said she "share[d] some of the trustee's concerns" about the alleged "double counting" of the exemption, but emphasized that she did not "have anything that factually tells me that this was all done in any kind of bad faith."  (Tr. 9:9–11 [Bankr. D.E. 51].)  She denied the Trustee's objection without prejudice to its renewal within 30 days if the Trustee found cases on point or uncovered facts indicative of bad faith. (Tr. 9:11–22.)

Turning to Lomberg's request, Judge Winfield attempted to clarify the nature of the relief sought.  She asked Lomberg's attorney, Andrew Turner, if what he wanted was relief from the stay.

> MR. TURNER: In essence, that's exactly what we're asking for, although I wasn't quite sure it should be termed as relief from stay because I think the relief we're seeking probably falls more squarely under *Stern*[] *v. Marshall* argument in terms of whether this Court can even decide this type of state law issue, and that was made plain in our last filing with that Third Circuit referral of the question of law to the New Jersey Supreme Court.  So whether we caption it relief from the stay, or state when it doesn't apply, or a simple direction to the state court to make the determination of the state

law issue, I would certainly yield to Your Honor in how we term it. But the Court does understand correctly that the Lomberg & Del Vescovo firm believes that this issue regarding its lien should be properly decided in the state court.

THE COURT: Well, I would give you a yes and no to that, I think. I think first the question is [] whether you ought to be permitted to go forward at this juncture. And then the next question, of course, is where is that decision made.

(Tr. 11:18–12:16.) Discussion then moved to Lomberg's objection to the exemption:

MR. TURNER: If I may, Your Honor, on the exemption issue, I think we stand in a little different shoes, if you will, than the trustee. Because if this is determined to be an appropriate lien, the timing of it was well more than a year before the bankruptcy and there's an unequivocal statement by the now debtor saying I give you an interest in the $25,000 and change that comes out of the personal injury case when I settle it. And that's a consensual lien, so there would be no 522(f) opportunity to avoid the lien, again, assuming it's deemed to0 be a lien. And that's why I was, of course, quiet during the --

THE COURT: Here's my issue with that, and I'd ask you to respond to that, and then I'll hear from anybody else. The interesting thing to me is, the services that give rise to the claim by your clients rose in connection with the matrimonial proceeding and whatever the rights are in that matter, apparently there was nothing to satisfy themselves from in connection with that matter. They subsequently got an agreement, one could argue it's a mere promise, from the debtor here to pay them from the proceeds of this personal injury action. And curious to me is how the charging lien that might arise in the matrimonial action becomes [e]ffective as to the personal injury action. Because I think that's how I hear the argument being made. Because there doesn't seem to be any other documents that would otherwise create a security interest.

MR. TURNER: That's correct. And what the Court is raising, I think, is what I call sort of the nonlinear aspect in terms of had our clients been the original attorneys, say, in the personal injury action, then we have a common law argument as to an attorney's charging lien.

(Tr. 13:1–14:6.) Lomberg stressed that, had the state court determined that the lien was

6

enforceable, such a finding would bind the bankruptcy court. (Tr. 15:14–17.)

After hearing additional arguments, Judge Winfield again addressed counsel for Lomberg:

> THE COURT: Mr. Turner, I think it's a bit of a reach. The best I can construe this motion is that it's a motion for relief from stay. And to the extent it can be construed as that, I don't see a basis to grant relief from stay because, at least facially at this juncture . . . at best, your clients hold an unsecured claim.  So there would be no basis, frankly, whether I construe it as a motion from relief from stay, or as filed a motion confirmed what you're calling termination or absent of a stay, the fact of the matter is, if the claim asserted by your clients is classically one that can be construed as subject to the automatic stay, whether property of the estate or property of the debtor, there does not seem to be facially any security interest that your client would have in those funds.
>
> Now, I understand there may yet be a claim objection process to be had on that subject, so I'm not ruling definitively.  But I must say, just looking at the plain language of the New Jersey Charging Lien Statute, I find it hard to construe this issue as falling within it. And I will also, and this is just a preliminary facial determination, looking at the so-called lien letter, frankly, it looks more like a promise to pay.  And without more, I don't see how that's a secured position for your clients.  But I'm willing to entertain other arguments other than the ones advanced here.  But for the purposes of today's motion, motion denied.

(Tr. 18:19–19:18.)  The hearing then came to a close.

Shortly afterwards, Judge Winfield entered several orders.  The first, dated February 15, granted Sash a discharge pursuant to 11 U.S.C. § 727.  [*See* Bankr. D.E. 35.]  Then, on March 6, Judge Winfield entered additional orders 1) denying without prejudice the Trustee's objection and setting a March 13 amendment date [Bankr. D.E. 37]; 2) denying Lomberg's "motion to confirm, termination or absence of stay" [Bankr.

D.E. 38]; and 3) denying Lomberg's objections [Bankr. D.E. 39]. The orders were not accompanied by an opinion or any additional reasoning. The Trustee did not further pursue the motion dismissed without prejudice. On March 20, Lomberg filed a timely notice of appeal (pursuant to Fed. R. Bankr. P. 8002(a)) of the orders denying its applications for relief.

## II.

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a), reviewing the bankruptcy court's "legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof." *Ettinger & Assocs,. v. Miller (In re Miller)*, 730 F.3d 198, 203 (3d Cir. 2013) (internal quotation marks & citation omitted). Specifically, orders denying relief from the automatic bankruptcy stay are reviewed for abuse of discretion. *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 88–89 (3d Cir. 1997).

## III.

Lomberg argues first, as it did below, that the bankruptcy court lacked jurisdiction to rule on "the applicability of" the New Jersey attorney's charging lien statute—N.J.S.A. § 2A:13-5—pursuant to the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern*, the Court held that a bankruptcy court exceeded its permissible jurisdiction under Article III when it "enter[ed] a final judgment on a state law counterclaim that [wa]s not resolved in the process of ruling on a creditor's proof of

8

claim," despite Congress's statutory grant of authority to do so. *Id.* at 2620. Pointing to the statutory language of § 2A:13-5 and state-court decisions about the procedures for establishing an attorney's charging lien, Lomberg contends that the bankruptcy court effectively usurped what was the exclusive domain of the state courts when it determined the viability of the lien.

  The reliance on *Stern* is misplaced. Lomberg assumes that the bankruptcy court inserted itself into the process envisioned by § 2A:13-5, which requires (as discussed further below) an attorney to petition for a lien in the New Jersey state court and on the docket where the relevant action is pending. *See Musikoff v. Jay Parrino's the Mint, L.L.C.*, 172 N.J. 133, 145 (N.J. 2002) (citing *H. & H. Ranch Homes, Inc. v. Smith*, 54 N.J. Super. 347, 353–54 (App. Div. 1959)). But the record clearly shows that Judge Winfield was determining the validity of the lien based on Lomberg's statutory compliance pre-bankruptcy filing. Although the Superior Court may have been "uniquely qualified" to determine the boundaries of the lien, it is not, as Lomberg claims, the "only legally authorized forum[] to determine the applicability of the attorney's lien for services." (Lomberg's Br. 10–11.) To the contrary, federal courts often determine the status of a lien or other obligation, looking to state law in making their decisions. *See, e.g.*, *Graffen v. Philadelphia*, 984 F.2d 91, 94 (3d Cir. 1992) ("We determine if the lien was so perfected by reference to state law."); *see also Rogan v. Bank One, N.A. (In re Cook)*, 457 F.3d 561, 566 (6th Cir. 2006) (looking to state law to determine whether a security

9

interest was perfected); *In re Electronic Metal Prods., Inc.*, 916 F.2d 1502, 1504 (10th Cir. 1990) ("The validity and extent of an attorney's lien in bankruptcy is determined by state law." (internal quotation marks & citation omitted)). *Stern* did not change this state of affairs, and it is otherwise inapplicable to the case at bar.

      The next question is whether Judge Winfield abused her discretion by declining to lift the automatic stay. As she recognized, Lomberg intervened in *Sash v. Chu* to argue that the firm was owed the settlement proceeds being held in escrow under the letter "lien" executed by Lomberg and Sash. Its *Sash v. Chu* submissions did not reference § 2A:13-5, and they otherwise did not comply with the statutory requirement—as indicated by the Trustee in its objection to lifting the stay, and which has not been satisfactorily addressed by Lomberg—that an attorney's charging lien be filed in the action in which funds were owed: here, the matrimonial suit, not the personal injury suit. *See Musikoff*, 172 N.J. at 145; *see also Hoffman & Schreiber v. Medina*, 224 B.R. 556, 561–62 (D.N.J. 1998) (Cooper, J.) (discussing statutory steps required for perfection of lien), *abrogated in part on other grounds by Musikoff*, 172 N.J. at 145; *In re Rapid Freight Sys., Inc.*, No. 09-34047, 2011 WL 1300441, at *7 (Bankr. D.N.J. Mar. 31, 2011) (Burns, J.) (emphasizing that *Musikoff* "reiterated the necessity of a petition filing in the specific forum prior to any enforceable and/or perfected lien right arising in favor of the attorney asserting the lien"). Judge Winfield was not convinced that lifting the stay was appropriate under these facts, and her decision does not represent an abuse of discretion.

Finally, in its brief before this Court, Lomberg argues that "[t]o the extent the Bankruptcy Court overruled Appellant's objection to the claimed exemption in escrowed funds, it also erred, or at least ruled prematurely, pending a decision by the Superior Court of New Jersey on the applicability of the lien law." (Lomberg's Br. 12–13.)  As discussed above, Judge Winfield's decision was not premature, and the record does not clearly set forth any other stated basis for Lomberg's objection, to the extent that it was based on a theory different from the Trustee's.  Because Lomberg identifies no other reason to believe that Judge Winfield erred, the Court will affirm the order denying Lomberg's objection.  *See Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief . . . .").

## IV.

For the foregoing reasons, the decisions of the bankruptcy court will be affirmed via appropriate order.

March 31, 2014                                          /s/ Katharine S. Hayden
                                                        Katharine S. Hayden, U.S.D.J.